HAWKINS et al. v. BRITISH & A. MORTG. CO. OF LONDON, Limited.

(Circuit Court of Appeals, Fifth Circuit. January 25, 1898.)

No. 610.

MORTGAGES—RESCISSION FOR FRAUD—EVIDENCE CONSIDERED.

A foreign mortgage company, through correspondents acting in its behalf, made a loan on a farm, and two years later accepted a deed for the land in satisfaction of the debt. When the loan was made the land was examined for the company by its local correspondent, and also a general examiner, both of whom were familiar with the value of lands in the vicinity. When the conveyance was taken an examination was made by another general representative. *Held*, that under such facts the company could not maintain a suit against the mortgagor and a former mortgagee, who received the proceeds of the loan, for a rescission, on the ground of a conspiracy between them to defraud it by means of overvaluation.

Appeal from the Circuit Court of the United States for the Middle District of Alabama.

This was a suit by the British & American Mortgage Company of London, Limited, against Thomas W. Hawkins and Peter A. Buyck. There was a decree for complainant, from which the defendants appeal.

H. C. Tompkins, for appellants.

W. A. Gunter, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

McCORMICK, Circuit Judge. The appellee, the British & American Mortgage Company of London, Limited, was for several years before the 18th day of February, 1891, engaged in loaning money on farm lands in Alabama and the neighboring states. It appears to have had some responsible controlling agency located in the city of New Orleans, though the embodiment of its authority there is somewhat shadowy. A firm of brokers, Shattuck & Hoffman, had much to do with its transactions. Their exact relation to the appellee, in 1891, is a subject of dispute, but applications to the company for loans appear to have had to pass through this firm of brokers. They had correspondents in different localities in the states where loans were to be effected, selected by them, and through whom, also, applications in their immediate locality had to come to the brokers in New Orleans for presentation to the shadow of the company in New Orleans. A Mr. English had some kind of a roving commission, giving high rank in the confidence of the company, to look after the investments of the appellee in several states, including Alabama. He appears to have lived in Columbia, S. C. Upon his getting disabled to attend to the business, he, in response to a letter from Shattuck & Hoffman, opened negotiations with one Dr. E. S. E. Bryan to take his (English's) place, and, on his (English's) recommendation, Dr. Bryan received the appointment, and entered upon the work. Some time before 1891, Shattuck & Hoffman selected J. H. Judkins to be their correspondent for Elmore county, Ala. He was their recognized correspondent, and advertised in the papers, they paying one-half of the advertising, and he the other, the advertisements being in these words: "Loans negotiated on improved farms. Apply to J. H. Judkins, Attorney." He was furnished printed blanks, upon which applications for loans were to be made, and which embraced very many questions, or, as he as a witness says, "A very great many;" and he adds that "nobody could answer those questions at first, otherwise than by previous examination and study of these blanks, without destroying a great many blanks." On February 12, 1891, J. H. Judkins wrote from Wetumpka, Ala., to Shattuck & Hoffman, New Orleans: "Herewith I send application of Thomas W. Hawkins for $13,500, together with abstract of his title." On the next day Shattuck & Hoffman replied: "From representations we have from you and from the inspector, we have induced the lenders to make an exception in this case to their usual rule, and to follow your suggestion to lend Mr. Hawkins $12,000, with $2,000 insurance on the residence, for five years, to be taken out, if possible, in the London & Liverpool & Globe." In a letter, date not given, Judkins wrote: "Inclosed find Hawkins' contract for fees, left out by mistake." On February 16, 1891, Shattuck & Hoffman wrote to Judkins: "We have the abstract, but no statement from you as to whether he accepts $12,000 or not. Please advise us." On the same day, February 16th, Judkins wrote Shattuck & Hoffman: "Mr. Hawkins accepts your offer to negotiate $12,000, and will take policy with the Liverpool & London & Globe for $2,000, for five years, as you require. Contract for fees was forwarded by the next mail after the application was forwarded, having been left

out by oversight. I suppose you have it. You may submit the title." The agreement about fees appears to have been in the words of a printed form furnished by Shattuck & Hoffman, or by the appellee, through Shattuck & Hoffman. The deed of mortgage from Thomas W. Hawkins and his wife, Evaline A. Hawkins, to the British & American Mortgage Company of London, Limited, and five several promissory notes, aggregating the amount of $12,000, all bearing date 18th of February, 1891, were forwarded to Judkins, and duly executed by the borrower. Four of these notes were for $1,200 each, due, respectively, the 1st of November, 1891, 1892, 1893, and 1894. The commissions of Shattuck & Hoffman were deducted from the amount, and a check for the balance, payable to the order of J. H. Judkins, was sent to him, who was charged to see that all prior liens, whether mortgage or for purchase money, on the property, were paid off and canceled; and upon this being done he was to take out his commissions, and pay the balance, if any, to the borrower. The property was subject to a prior mortgage, at that time held by the appellant Peter A. Buyck. All of the property offered as security had also been owned by said appellant, and conveyed by him at different times to the other appellant, Thomas W. Hawkins, and was subject to a lien for unpaid purchase money in favor of the appellant Buyck. The amount of this lien for unpaid purchase money is not definitely given, but it appears that, for the amount of money which came to Hawkins from his negotiation with the appellee, Buyck canceled the mortgage, and released the land from the lien for purchase money; thus clearing the title of all incumbrances prior to that of appellee's mortgage. Buyck was at that time, and still is, engaged in the banking business in Wetumpka, Ala., where the personal negotiations were conducted, and the check that was sent to Judkins was indorsed and delivered to Buyck.

In the fall of 1891, Hawkins paid the interest which had accrued on the loan, and $600 on the principal of the $1,200 note then matured. On the 1st of November, 1892, Hawkins was not able to meet the payment of interest and the principal then maturing, of which inability he duly notified Shattuck & Hoffman; suggesting, however, that he had expectation of receiving money from Texas to enable him to pay the interest, and offering to place in the hands of Judkins a quitclaim deed to the premises on which the loan had been negotiated, to be held by him in escrow until his expectations from Texas were realized or disappointed; which suggestion was acceded to and acted on, and in a few months Hawkins did get money from Texas, and made payment of the interest, and was suffered to make a trial for another year on the farm. In the fall of 1893 it was apparent that Hawkins could not meet his payments, and he again offered to make surrender of the property in satisfaction of the debt, which was accepted by the company, deed duly passed, possession surrendered, and the company took charge of the property. The appellee rented to Hawkins the small farm and residence. The large farm it rented to other parties for the year 1894. On March 5, 1895, the bill in this case was filed. It charges the appellants with a conspiracy to defraud the appellee by combin-

ing to procure upon the property described in the bill a larger amount of loan than the value of the property would support, negotiating in the name of Hawkins, who was insolvent, and intending to abandon the property to the lender. It tenders a reconveyance, and prays that the contract of loan, and the mortgage to secure the same, and the acceptance of the deed from Hawkins to the lands in satisfaction of the same, may be rescinded, vacated, and annulled, and that the defendants, and particularly Peter A. Buyck, who is alone solvent, may be charged in personam with the amount of the loan and interest thereon, and be required to pay the same to orator, and that the land be restored to the defendants (appellants) upon the discharge of orator's debt and interest. When the suit reached a hearing, the circuit court passed a decree substantially granting the complainant all the relief it sought. The suit is here on appeal from this decree.

The appellants' assignment of errors embraces 16 specifications, the first 8 of which relate to the rulings of the circuit court on the introduction of testimony; the others, to the different features of the decree in favor of the appellee. The view that we take of the case makes it unnecessary to notice the first 8 of these specifications of error, and authorizes us to treat the remaining 8 as a general assignment that the court erred in sustaining the appellee's case. We think the circuit court did err in passing its decree in favor of the complainant. A most careful examination of all the proof does not discover any fact that existed at the time, and prior to the making of this loan, that was not then known, or certainly should have been known, to the "correspondent" (if that word is preferred, rather than "agent") through whom the appellee negotiated the same. It is not shown that the history of the title, as given in the application for the loan and in the accompanying abstract of title, is erroneous in any particular. The only claim that the proof can be said to make that any misrepresentation was indulged is that the estimate of value put upon the property by the applicant for the loan was grossly excessive. It distinctly appears upon the face of the printed form which the brokers and the correspondents were required to use in soliciting or receiving applications for loans that the company did not rely solely, or even chiefly, on the representations made or to be made by the borrower. On that application was a caution that an overvaluation would cause the loan to be refused on that ground. It is clear that these "correspondents" (we adhere to that word, as the appellee does not like the word "agent") had constantly associated with them in this and like transactions an inspector and appraiser, a Mr. Boothe, a man of experience and of reputation, against whom no charge is made, who carefully examined this property, and made report of his estimate of its value. Along with him went the lawyer, J. H. Judkins, the local correspondent, who is also a farmer, and acquainted with the value of farm property, and both these chosen men thoroughly inspected the premises before the application for the loan was accepted and the money passed. It clearly appears that in the year 1890, the year just preceding the negotiation of this loan, a full cotton crop had been made on the place.

Cotton then bore a good price, and the property was in fine condition. In 1891 and 1892 that section of the country suffered from drouth, and the cotton crop in that locality failed to a large extent. An unprecedented fall in the price of cotton, and other causes, have greatly affected the value of farm property in that as well as in other sections of the country. At the time Hawkins surrendered the property in satisfaction of the debt, it was reasonably worth, to one who wanted such property, the amount remaining unpaid on the mortgage. Hawkins had dealt with the property, and with the appellee's correspondents Shattuck & Hoffman, in a way to meet their approval and commendation of his frankness and fair dealing. The property was not hid away in a remote corner of the country, but was within three or four miles of Montgomery, the capital of the state, where the inspector, Boothe, lived, and only a few miles from the office of the appellee's correspondent J. H. Judkins. There was no difficulty in the appellee's ascertaining all that anybody could know as to the value of the property at the time it accepted the same in satisfaction of the debt. At that very time the appellee's man Dr. Bryan took charge of the property, inspected it thoroughly, reported on its condition and value fully; and Shattuck & Hoffman, under date of January 3, 1894, wrote to Bryan, saying: "We note what you write about the place, and are glad to hear that the company will not have to make a loss on it." No action upon the part of either of the appellants at the time of these transactions, or prior thereto, pertinent to the same, which was not fully known to the appellee, or to its chosen and recognized correspondents, or would not have been discovered by the most reasonable inquiries, has been shown by the proof in this case. The appellee received the title and possession of the property, and retained it, and experimented with it, more than a year before the bill in this case was filed. It is true that, from the very nature of the case, charges of conspiracy and fraud cannot often be established by direct proof; but it is equally true that such charges should never be sustained without, at least, proof of facts and circumstances sufficient to satisfy the common understanding that the parties charged have wronged the complainant. We refrain from discussing the testimony in detail, because it so abundantly satisfies us that it does not sustain the appellee's suit that we prefer not to burden our opinion with a more particular discussion of it. The decree of the circuit court is reversed, and the suit is remanded to that court, with directions to set the decree aside, and pass a decree dismissing complainant's bill at the complainant's cost, the appellants to recover all costs of this court, except the cost of printing the transcript.